One and only case today is State of Connecticut versus Exxon Mobil Corporation. Council is present, I'm told, Mr. Chamagat, again, we're seeing a lot of each other this week. You've reserved two minutes for rebuttal, so you've got eight minutes out of the gate. Floor is yours. So let me, before we start, let me just remind everybody what I think you already know. I guess the masking policy is that the judges need not wear them and the advocates need not wear them when they're at the lectern. But everybody else is asked to wear them while you're in the courtroom. It's still an improvement over where we were before, because now visitors can come in and sit in the gallery, which is nice. So it feels almost back to normal. And when we're in an argument, it feels very much back to normal. So you may proceed, Mr. Chamagat. Great, thank you, Judge Sullivan. Kenneth Chamagat, I'm a police for Appellant Exxon Mobil. May it please the court. In this case, like dozens of others around the country, a state or local government seeks to impose liability on an energy provider for injuries allegedly caused by global climate change. This appeal presents the question of whether the case belongs in federal or state court. In granting a stay of the district court's remand order, this court concluded that there was a substantial likelihood of federal jurisdiction over Connecticut's claims. This court should now hold that federal jurisdiction lies. For the reasons this court recently gave in the city of New York, these claims are governed by federal common law because they are focused on climate change related harms. Well, they're different statutes, they're very different statutes, right? One is a cut-plus statute, this one involves deceptive trade practices, the other was a nuisance case, right? The cause of action is different, but our fundamental submission, Judge Sullivan, is that that is of no moment. And that is for the simple reason that Connecticut cannot dispute and its complaint clearly reflects that it is seeking monetary relief for, in its words, the catastrophic harm caused by global climate change. And so for purposes of the question of whether federal common law applies, and I will also get to the question of whether a federal common law applies, it supplies a basis for federal jurisdiction. But for purposes- That's the other key difference, of course, is that in New York, in the Chevron case, the state brought the case in federal court. Correct. Here, we're dealing with something very different, which is removal, and it's a tougher road to hoe under removal. You would agree with that? So let me address both of those questions. First, Judge Sullivan, the question of whether the reasoning of City of New York extends to this case such that federal common law applies. And then the issue that City of New York did not resolve. So on the first question, I just want to be clear about the rule that we take from City of New York. And that is that where you have a claim, like this one, that is seeking relief for injuries allegedly caused by global climate change and worldwide greenhouse gas emissions. Federal common law applies, regardless of the specific cause of action. And we rely first on the remedies that are being sought here, which while equitable remedies, are inevitably remedies for monetary relief, restitution, disgorgement, and statutory penalties. And I think in particular, the evidence that these remedies are broader remedies that are directed at the harms created by global climate change. Can be found in the complaint itself. Are you saying though that there's no way that a targeted remedy could be found? It feels very cart before the horse to me, right now. Like we're in a matter of removal, why do we care about remedy at this point? Well, I think the court does care about the nature of the claims and the remedies. And it is precisely because the remedy that is being sought is a broader remedy for harms caused by worldwide greenhouse gas emissions. Would that be a new proposition of law? That because of the remedy being sought in a complaint, that a district court or a trial court would be unable to fashion a more targeted remedy? I don't think so, Judge Perez. And I do think that Connecticut has not at any point in this litigation disavowed that broader remedy. Which is to say that if Connecticut were seeking the sort of remedy that you might find in a more traditional consumer deception case. Such as restitution for the harm suffered by consumers. As opposed to restitution for the harm suffered by the state from the effects of worldwide greenhouse gas emissions. Which is what triggers the general principle that with regard to claims for interstate pollution where a state is attempting to project its policies outside its borders. That's the principle that this court recognized in the city of New York. Under those circumstances, federal common law applies. Now I don't want to suggest that this is just about the remedies. Because as you will be aware from the briefing, we make the point that on a cutbook claim, the state is pursuing a claim that is itself dependent on causation. Because under the rule for unfair practices in Connecticut, one of the bases is that the practice causes a substantial injury to consumers. The state is relying on that. But ultimately to us, it's really the breadth of the remedies that underscores. That this is a lawsuit for injuries caused by worldwide greenhouse gas emissions. But the fact that federal preemption, that preemption might be your defense, doesn't mean that you automatically get into federal record on removal grounds, right? Well that brings us to the second issue and the issue that you and the court left open in the city of New York. So let me speak to that issue. Once federal common law applies, the next question is, is that a basis for arising under jurisdiction? Or is it merely a defense? And for the former position, we rely on two things. First, we rely on the fact that the Supreme Court has repeatedly recognized in a variety of contexts, that where claims are governed by federal common law, they arise under federal law for purposes of federal question jurisdiction outside the removal context. So as long as somebody can assert a federal common law defense, they're in federal court, they get to come here. It's not a defense here. And the reason why, as a matter of first principles, Judge Sullivan, is that in this context, if federal common law applies, state law has no room to operate. This is not a circumstance like, for instance, the Boyle versus United Technologies defense, where state law provides the rule of decision, but federal law provides a defense that precludes the claim from going forward. Here, and I think this is entirely consistent with this court's reasoning in city of New York itself, federal common law supplies the rule of decision. The first question, if we prevail on the jurisdictional issue for Judge Hall on remand would be, does federal common law supply a cause of action in these circumstances? And then, is it displaced by federal statutory law or some other source of authority? So making false statements about the effects of fossil fuels is, in your view, a common law question? The question would be, by virtue of the application of federal common law under the reasoning of this court's decision in city of New York, the next question would be, is there a federal common law cause of action for this type of claim? And it may well be- False statements, all right? I mean, whatever the merits of it, it's that false statements were made that induced people to purchase fossil fuels, right? At least that's one of the claims. That is the claim. And so then the question would be, would a court, in the exercise of its federal common law making authority, determine that there is a cause of action for that? And the answer to that question may well be yes. That would be a merits question. Is there a federal common law that covers false statements like that, that preempts the field from state law? That's your argument? It is akin to complete preemption, but it is not complete preemption. And I would point this court to- What does akin to mean, incomplete? I mean, I'm not sure what akin to means. It's either complete or it's not. Well, a complete preemption is a doctrine that applies in the statutory context. It's been recognized by the Supreme Court. And there's no statute here. We're talking about federal common law. There is no statute, but it is the same in this sense, Judge Nardini. Our argument is that in this circumstance, federal law supplies the rule of decision. And I was saying to Judge Sullivan that one place to look for this- But again, let's just back up to where Judge Sullivan was talking about. It supplies the rule of decision for a claim that there were false statements made? Correct. And then- What is that rule? What is the rule of decision? Is the rule of decision you're claiming that yes, you can raise a federal common law claim saying that yes, you injured me by making false statements? What, identify the rule of decision- Judge Nardini, it will not surprise you to learn that we would take the position that a federal court should not recognize such a cause of action as a matter of federal common law lawmaking. That's a merits- But it sounds to me like you're saying there is no federal rule of decision. Well, that's the merits question. In other words- So then what is the rule of decision that you say the federal rule of decision is? We would say that there should be no cause of action. So that's a merits question. So that's an action argument, though. That's different. No, the way in which it is different is we are not saying that state law provides the cause of action, but that federal law comes in and precludes the claim from going forward, preempts the claim. That is a circumstance like Boyle. If you had Boyle preemption, you would have a state tort claim. But federal law, because of the federal policies encompassed in the discretionary function exception of the FTCA, comes in and ends that claim. Here, by virtue of the fact that this is akin to interstate pollution, state law has no room to operate. In that respect, it is like complete preemption. But in this context, it's because of- I guess what I'm not understanding is when you use words like akin to, and it's like. I don't understand it if you're saying it doesn't fit within the known doctrines, and then I don't understand what you're saying is like and akin, it's sort of, it seems to be a concession that none of the doctrines that we know about apply, and you're asking us to create something different. I don't think so, because I think the way in which it is akin to complete preemption, and I do think that that's the right way to think about it, and I would point this court to its decision in Republic of Philippines versus Marcos, because in the relevant paragraph of that decision, where the court discusses federal common law, it actually looks to some of the cases like Avco and Franchise Tax Board that involve complete preemption. And the two respects in which these are similar is that state law is out of the picture entirely. In other words, the cause of action has to come from federal law, and then there might also be displacement by federal statutory authority. What do you make of the idea, though? I mean, that was from 1986, our Philippines case. Wasn't that sort of a prefiguring of gravely? Well- Maybe not in the words, or quite described in the way that it would later be formulated, but isn't it effectively an embodiment of gravely? Well, I'm grateful to you for noting that, Judge Nardini, because as you will be aware, I think that there's a way to conceive of this in gravely terms as well, and if you look at the next paragraph of the Republic of Philippines decision, I think it effectively did that. As the court will be aware, we make the argument that if you agree with us that the reasoning of City of New York on the question of whether or not federal common law applies extends to this claim. And again, the only difference is the styling of the cause of action. The relief that is being sought is very, very similar to the relief in City of New York. Well, they're seeking all kinds of relief, but I mean, it might get carved up in the state court. But then I'd say you're not entitled to all the damage from global warming over the last half century or couple of centuries. You're only entitled to the reliance of a handful of people who maybe wouldn't have bought gas had they known that it was harmful to the environment. Fair enough, they may not get everything they're seeking, but for purposes of whether or not there's jurisdiction, you look at what they're claiming in the complaint. And I would note one thing, and then I do want to say something to get back to Judge Nardini's question. On the issue of what they're seeking, it is telling that in footnote four of her opinion, adjoined appendix 224, Chief Judge Hall narrowed the relief that was being sought. Sui sponte, she tried to narrow the restitution to expenditures attributable to Exxon Mobil's allegedly deceptive and unfair practices. Now, I don't think that- So why is that for you, though? Like, right? I mean, doesn't that just prove that something could be targeted and therefore it is citing this on the basis of what a potential requested relief was? Well, I don't think that that's true, Judge Perez, for the simple reason that, again, for purposes of jurisdiction, you've got to look at what's pleaded in the complaint. You've got to look at the claims. I mean, that's interesting, because a lot of your argument is that what they are pleading, which is under state law, is something that we should be interpreting as something broader than that. By my count, there are at least four areas of new law that I think you're asking us to make. And I would invite you to tell me when I'm wrong. But by my count, one, that there is an exception to the well-pleaded complaint rule about federal common law being allowed for removal. Two, is that federal common law can be a source of complete preemption. Three, that the artful pleading doctrine is something different upon removal as opposed to a corollary. And four, is that overzealous remedy can somehow convert a state law claim into a federal claim. Yeah, I'm happy to address all those things, and then I do want to get back to the issue of Grable. So I guess that makes five things for me to address, and I'll try to address them quickly. Believe me, I can wait. We're kind of Judge Perez's points first. Great. Well, I'm happy to do that. Judge Perez, let me start with the exception to the well-pleaded complaint rule. We cite numerous decisions from circuits that have said that federal common law can provide a basis for removal jurisdiction. The Samuel Majors case, the Otter Tail case, the Caudill case, et cetera. Now those are all cases that involve different bases for federal common law. But I think as a matter of first principles, the reason that this makes sense- Sir, is first principles the way you're trying to say a matter of first impression for us? Like are we, my question is, is are you, you can take the position that we should say this ought to be. What I'm trying to figure out is what are you asking us to say this is the law on precedent of the second circuit versus what actually is. And when you use words like first principles, that makes me think you're asking us to declare something new. No, I'm not because I think if you look at the second circuit case law on this specific question, the first issue that you raised. The Republic of Philippines versus Marcos case gets us 99% of the way there. The only thing about that case is that the court said that federal common law probably applied. But it casts no doubt on the proposition that if federal common law did apply, that there would be federal jurisdiction. And as I pointed out with regard to the Supreme Court precedent, there are a number of cases cited in the National Farmers Union case for the proposition that if federal common law applies, there's a rising under jurisdiction. If it were only a defense, none of those cases would make sense. Second, you raise the issue of complete preemption. Again, we recognize that that doctrine applies in the context of federal statutes that effectively so occupy the field that there's no room for state law to operate. But it would be quite anomalous to say that that provides a basis for federal jurisdiction, but that when federal common law does the same thing, where the federal interest is so pervasive that there's no room for state law to operate, that you would not have. So you are asking us to create something new? No, because the cases that I cited in response to your first point, I think, address this specific issue. In other words, whether or not federal common law provides a basis for removal, whether or not it is a simple preemption defense, or whether or not it does something more. On the issue of the artful pleading doctrine, this is really, in some sense, a variation on the second point, which is to say that the state sets great store by the notion that the only basis for getting past the pleading of a state law claim are first complete preemption or second grable. And that actually allows me to answer Judge Nardini's question, because I think in the alternative, if you agree with us that federal common law applies, that itself presents a substantial question of federal law that supports grable jurisdiction. And we cite the Battle case, the Torres case, and a number of cases for other circuits that stand for that proposition. That, again, makes sense, because in essence, what we are saying is if federal common law applies, then you have to resolve questions of federal law in determining the elements of the claim. What does that mean when you say federal law applies? because that could mean any number of things, right? It could mean that it creates a subsidiary issue of federal law that needs to be determined in order to resolve a state claim. Or it could mean, I suppose, your complete preemption argument that all state law is wiped off the map and there's only federal law. So what do you mean by that when you say federal law applies? Could you be more precise? I think we do mean the latter, which is to say that we mean that state law is wiped off the map by virtue. So now we're not really talking about grable, right? No, because I think we are talking about grable in the sense that what grable stands for is the notion that where a claim presents substantial questions of federal law, there is federal jurisdiction. And so in some sense, yes- Is grable a sort of a lesser included set within the set of what you would say is, we live in a world where state law has been sucked out into the vacuum of space and there's only federal law left here. I mean, that's not what grable was about, was it? Well, to be sure, grable can apply in circumstances in which state law has not been sucked out of, in the outer space, where state law still applies. But there are nevertheless federal issues to be resolved. I guess our submission is simply that a forciore, where federal common law operates, that there is federal jurisdiction under grable because substantial questions of federal law will nevertheless have to be resumed, resolved. And then fourth, Judge Perez, with regard to the remedy. Here's why I think that this is so significant. Even if you credit Judge Hall's effort to narrow the relief that is being sought, we would submit that that doesn't do the trick. And this issue actually came up in the oral argument in this court on the stay motion. And the state's lawyer, in that case, Mr. Salton, was asked about this. And what he basically said was that the state was seeking restitution that was attributable to Exxon's deception. But it was clear in his colloquy with Judge Menasche that that incorporated claims for monetary relief for the harms caused by climate change. And I would note two things about that. First, that that is not your typical remedy in a state consumer deception claim. The typical remedy is restitution to consumers. No, no, clearly. So if they've, what it seems to me your argument boils down to, if they've overshot the mark on their remedies, then you get to remove to federal court. That's the rule you seem to be asking us to announce. But I don't see a lot of, I don't see a lot of precedent for that. Well, this is a very unusual type of state law claim. And so, in some sense, the issue that's presented in this case, which is obviously presented in other cases that are percolating up around the country, is whether when you have a claim of this variety, that again, by its terms, seeks relief for harms caused by worldwide greenhouse gas emissions. Whether the principle that the Supreme Court has articulated for a century, as this court recognized in the city of New York, applies and whether federal common law governs. That is, of course, the first question here. And our submission on that question is that this court's reasoning in the city of New York, which talked at great length about the relief that was being sought, and went so far as to say that where the relief that is being sought is relief that would have the effect of modifying the behavior of the producers, that that triggers the rule that the Supreme Court has recognized in a series of cases leading up to AEP. And then, all that you are left to decide is the second question, which is the question of whether or not, if federal common law applies, that provides a basis for federal jurisdiction. And again, I start from the proposition that if it did not, if it could only operate as a defense, then the cases in which the Supreme Court has said that, for instance, issues involving Indian law, where federal common law applies, provide a basis for federal jurisdiction, would not make a lot of sense. And so, again, I think the best way to think about this is sort of as akin to a choice of law question. Let's say that I got into a car accident with one of you in the state of New York, and I filed a civil complaint, and I invoked the law of the state of Kansas. I think what a court would say is, no, you can't do that. The law of the state of New York is going to apply going forward. Here, so too, we are making the argument that because this is an area in which federal common law applies, federal law, again, supplies the rule of decision. Now, it's a merits question. I want to underscore that it's a merits question whether or not there is such a cause of action. If you look at a case like the United States versus Standard Oil, the Supreme Court's decision in that case, the Supreme Court ultimately concluded, as a matter of recognition of common law, it was not going to recognize a cause of action. It was a matter for Congress to do that. And I would note parenthetically that one of the oddities of the state's position, if you think that federal common law applies, is that you would leave a state court in the position of having to make that determination, which seems a very peculiar thing to do. Well, I mean, maybe we have confidence in state courts to see through the pleadings and see through the relief sought and say, no, no, you don't get all that. At most, you're going to have to show that somebody was deceived and that they're out of pocket for what they paid for gas that they thought was safe. You know, if the statements were, this is good to drink, I mean, I imagine there would be problems with that, right? And then a cutbook claim would be actionable. You're not saying that federal common law would preempt that deceptive statement, right? Well, but I think that we are certainly not taking the position that federal common law would displace all state consumer deception claims. Of course, that's not the position that we're taking. We're just taking the position that simply by modifying the cause of action to move back to an earlier step of the causal chain, and there can be no doubt that that is what is going on in this case and some of the other cases that have been brought in the wake of this court's decision in the city of New York, among others, that that doesn't solve the jurisdictional problem. But, I mean, it seems to me that unless common law, federal common law completely preempts the field, it seems to me that there's a real problem here, because we would generally trust state courts to work this through. I mean, if somebody said, but for the statements of Exxon, I would have bought an electric car or a bike, I mean, I suppose that they might have relief in the form of what they spent on a car or what they spent on gasoline. But it's not going to entitle them to all the, you know, the damages related to global warming. But if there's one thing I can be fairly confident of, it's that when my friend, Mr. Cheney, gets to the podium, he's not going to say that that's all that the state is seeking. The traditional sort of restitutionary harm for consumer deception. The state is seeking. Well, we'll ask him that. But, I mean, I guess the question I think that Judge Perez asked is sort of, is remedy sort of a way now, a new basis for federal removal? If the remedy looks really big and looks like it's going to then implicate federal common law or federal statutory law, is that a basis for removal? I think it would be quite- Just to add to that, and what if there are some remedies, they ask, which may not be fully preempted? You know, so maybe, you know, if the state court were to get this case and to say, well, okay, you know, you can get a remedy for not buying a bike or whatever it is, and you get a remedy for that, but you don't get a remedy for other things. You know, doesn't the fact that there's some remedies that are hypothetically still available and not preempted raise the immediate question of why it's not fully preempted? I don't think there's anything odd about that, Judge Nardini. It would be no different from a case where, for instance, a plaintiff brings federal law claims alongside state law claims, and there's federal jurisdiction under those circumstances, as long as there's some claims. But that's because we already know that there's a federal claim, and you're just exercising supplemental jurisdiction of the state claims. There's no doubt that you have a federal claim in there, and I guess here the question is, why do you necessarily only have a federal claim? Because that's the premise of your argument, is that there is only a federal claim. And I guess the other question I have is, you know, we're really only talking about the venue, I mean, not the venue in terms of geography, but which court? Nobody's saying that you can't raise these claims and, in fact, raise a preemption defense in state court, right? You would agree? Well, it's a... Well, let me just ask, do you agree that you could raise a federal preemption defense if you were in state court? If this court were to say, for instance, that federal common law only provides a defense, then, of course, if the case went back to state court, we would raise that defense along with our other arguments as to why any cause of action, whether it's state law... And they would be obliged to apply it if they found it to be valid, right? Of course, that's true, but... And then if they got it wrong, I assume, I have to think about this, but you could go all the way up and petition for cert, right? I mean, you would get... We'd have to do that through the state court system. And the one oddity of this, as I said earlier, is that it seems quite odd to put state courts in the position of determining whether or not federal common law exists. The whole point of federal common law... This might be odd, I mean, and there might be a good reason to rewrite 40 years worth of federal removal jurisdiction case law, but it seems to me that the courts and the Supreme Court as well have made it pretty tough to remove when somebody has pleaded purely state claims. For better or for worse, that's what they've done. I don't think that this court would have to rewrite any law because a fundamental point of disagreement between us and the state is on the question of whether or not, when the court has talked about complete preemption or grable, the court has done so in an exclusive way and said, those are the only bases on which you can say that artful pleading... Maybe that's the difference. Maybe you think that it is not a rewrite to add new exceptions. And maybe that's why we're speaking past each other. Well, I don't think that you're adding a new exception. Again, I invite the court to look at the existing body of case law on which we rely, including this court's decision in Republic of Philippines. Now, the state has a point, which is that that decision predates grable. But I guess our submission in response to that is, first, that when you look at that decision, it addresses both the issue of federal common law and the issue of whether or not there is, in any event, a substantial federal question on sort of a precursor to grable grounds. And second, that we think that that doctrinal distinction really doesn't matter because another way to conceive of this is that if federal common law applies, that provides the substantial question of federal law. All roads at that point, I think, lead to the same conclusion. And as we point out, there are certainly decisions from other circuits that address specifically the question of whether or not federal common law can provide a basis for removal of jurisdiction. And while the state attempts to say, well, those were also grable-type cases, I think our reading of those cases is the better one. Now, I certainly want to note the fact that there is a petition for certiorari currently pending in the case coming out of the Tenth Circuit, which frames these issues for the Supreme Court's review. That case is being considered by the Supreme Court at its conference on Wednesday. So we may or may not have guidance as to whether or not the Supreme Court thinks that it should intervene at this point. In our view, there are circuit conflicts on these issues in this context and more broadly. And so these are issues that I think, inevitably, the Supreme Court will have to resolve. Our fundamental submission to this Court is that in light of its decision in the City of New York, the reasoning of that decision and the focus in that decision on particular on the remedies as part of the analysis of what this complaint actually is dictates the conclusion that federal common law applies. And at that point, we would submit it's just a modest step to say that that provides a basis for jurisdiction and not merely a defense. All right. Well, we got our money's worth. You've reserved two minutes for rebuttal. Thank you. Thank you, Judge Sullivan. Now we'll hear from Mr. Cheney. Cheney, am I pronouncing it right? Either way, Your Honor. Well, what's the other way? Cheney. Cheney. Well, what do you say at home? I say Cheney. You say Cheney? I'll say Cheney too. Our former Vice President made it so that everyone says Cheney. Got it. All right. Well, Mr. Cheney, you've got 10 minutes, but who knows? We may keep you there longer. You may proceed. Good morning. May it please the Court, Assistant Attorney General Ben Cheney, representing the Appellee State of Connecticut. There is nothing new in ExxonMobil's submission this morning that hasn't already been heard and decided by the First, Third, Fourth, Ninth, and Tenth Circuits, and denied cert by the Supreme Court of the United States, because the Supreme Court has already decided this body of law. This Court should affirm the district court's decision and remand this case back to state because ExxonMobil's entire argument is built upon mischaracterizations of the state's complaint and misapplications of the law. Okay, so what are the remedies that you're seeking? What are the damages and relief that you're seeking in this complaint? Everything that we're seeking in this complaint is prescribed for by state statute, by the Connecticut Unfair Trade Practices Act. Okay, but just tell me what are those things? An injunction, first of all, that ExxonMobil stop lying to the consumers of Connecticut. Stop lying to consumers of Connecticut about what? Through their advertising. Through, for example, their campaign that algae biofuel is going to somehow lead us out of the climate crisis. Their ads surrounding climate change for the past several decades have deceived the consumers of Connecticut. And that's what our complaint states. And that's all the relief that we're seeking relates to that. In addition to injunction, injunctive relief, we're seeking the equitable relief for deceptive ads requiring mitigation. We're seeking civil penalties. Mitigation of what? Of the harms that flow from the injury to the consumers of Connecticut. So the consumers of Connecticut were injured how? Because they were lied to, your honor. Okay, well, that's an awful injury and it keeps people awake at night and makes them feel less, I guess, less alive. But what are the damages that go with that? Well, we cannot seek compensatory damages, your honor. We can only seek equitable relief as prescribed. So what's the equitable relief that relates to the lies that were told to the consumers of Connecticut? Well, for example, restitution, your honor, is one. Restitution for what? Yes, restitution for the lies. So how are they out of pocket for being told lies? Well, that's something that we'll have to prove once this case is remanded. I just want you to articulate what it might look like. Well, one way in which it might look like is what did ExxonMobil gain from lying? Such as restitution in Connecticut State Court is measured similarly to disgorgement, right? What did ExxonMobil gain from years of lying? And that is one form of relief that we are entitled to seek. So you want a disgorgement of all gas sales in Connecticut over the last something 20, 30 years? All gas sales that we can attribute to ExxonMobil's lies. Yes, your honor. Judge Hall did not overrule. How do you connect that? How do you connect the sales to the lies? I mean, how would you quantify that? Asking consumers how much gas would you have bought if Exxon hadn't aired a certain commercial? Here, I would refer you to the footnote in Judge Hall's opinion that does say accurately that we will be left to our proof for remedies that we can relate to. To understand that, I guess what we're asking is hypothetically, what would your trial look like? What would be the kind of proof that you would put on? To show what? I guess that is the question, is what exactly do you think you'd be trying to prove? And how would you go about proving it, hypothetically? We would hypothetically show that consumers were deceived. That consumers might have taken other actions. That they, to your example, Judge Sullivan, they might have done something different with their purchasing power. And that, yes, that there are harms to the climate that resulted from those decisions. If I could just ask a flavor of what my colleagues are asking. Is the scope of what you're seeking, the fact that it's a little bit tenuous, doesn't that help your opposing counsel? And that it makes it seem more like you're actually trying to regulate as opposed to actually getting something more concrete. What we are trying to regulate, Your Honor, if we're regulating anything, is deceptive speech aimed at the consumers of Connecticut. We can prevail on our case without recovering one dime for harms attributable to the climate if we can prove that ExxonMobil lied to the consumers of Connecticut. And that's why we brought the case that we did. And would injunctive relief enough? Just getting them to stop doing that, would that be enough for what you've been claiming? Well, at this initial stage, when we're deciding where this case should be heard, I wouldn't want to limit the remedies that the state is seeking in its- No, I'm not asking you to do that. Is it your position that if all you got is injunctive relief because you sought it, that is sufficient to keep you in state court and the rest is a proof issue? Well, our position, Your Honor, is that the relief that we are seeking is irrelevant at this stage of the proceeding. The relief that we're seeking is not confined within or not contemplated within the well-established black letter law for removal that the Supreme Court has demanded that courts consider when deciding whether cases should be heard in federal court or state court for purposes of the federal question removal analysis. Well, but wait. So if the relief you were seeking was an injunction that prohibited Exxon Mobil from producing and selling petroleum products, you think that would not be relevant to the removal arguments of Exxon Mobil? Potentially, if that was what we were seeking, then- Is it something you're seeking? No, Your Honor, no. We are not seeking anything relating to the production or ability of Exxon Mobil to sell their gas. Right, but that's the same thing that the plaintiffs said in the city of New York versus Chevron. They also said they weren't trying to do those things, but we saw it through. I mean, we're not dumb. We sort of understand what's going on here. The point is, does that allow them to remove to federal court because they see that this is sort of a crass ploy for votes or something else? And so that's- You're saying we don't get to consider this at all. Remedy is completely irrelevant. Well- Is that your position? Our position is that in this case, remedy is completely irrelevant because when you look at the cause of action, that's what actually determines whether or not this case is removed or removable under a federal question removal analysis. As a general matter, that is right. That's the well-pleaded complaint rule. And I guess there are exceptions to that. And so that's, I mean, I guess we're quibbling over whether there's only three exceptions to that, whether there are other exceptions to that. But your view is that the relief sought is irrelevant? In this case, yes. The relief sought is irrelevant to the determination of whether, under a federal question removal analysis, that this court can find federal jurisdiction. In the City of New York case, which Attorney Shammugan and Exxon Mobil so rely upon, the unlawful behavior, as Judge Sullivan, you noted in your questioning, in that case was emissions, was unlawful emissions. Here, the unlawful behavior that the state alleges through its one cause of action, a cause of action founded solely in state statute, the Connecticut Unfair Trade Practices Act, the unlawful behavior that we're seeking to remedy is Exxon Mobil's deceitful behavior, Exxon Mobil's decades of lies. And that is important because this court must determine under what law does a case arise under when considering questions of jurisdiction at this stage. And the Supreme Court in Gunn, and this court in Nasdaq, has said that a suit arises under the law that creates the cause of action. The law that creates the cause of action here is state statute. Moreover, there's the- Well, that was true in City of New York versus Chevron too. Those were nuisance statutes. But there, the unlawful behavior at issue was emissions. And that's why the court ended up where it did, I believe. Whereas here, the distinction is that the cause of action seeks to regulate. Well, no, no, they were very clever in Chevron too. They said it was the sales that they were concerned about, not the emissions. I think the court said you really can't separate those. And I think what Mr. Chamagian is saying is that you can't really separate the relief you're seeking from emissions either. So that might be a creative argument, might be an overly creative argument. But I'm not sure that the argument you're making now necessarily distinguishes your case from Chevron. Well, what distinguishes our case from Chevron is the procedural posture, first and foremost, Your Honor. There is the well-pleaded complaint rule. As Judge Hall said in her opinion, Exxon Mobil's position in this matter is straightforward. That important issues of federal law should be decided by federal courts. Unfortunately, the well-pleaded complaint rule exists. I think through your questioning, your honors were right in saying that Exxon Mobil is asking this court to create a doctrine aside and apart from the well-pleaded complaint rule and the exceptions and corollaries thereof. Council, can I ask you, assuming you win here, if you were to go back to state court, would you agree that the other side would be entitled to argue to the state court that your claims are preempted by federal law? Now, you may disagree and argue in state court that no, no, there's no preemption here. But conceptually, do you agree that the state court would be obligated to consider a federal preemption? There's nothing that this court, I don't think, off the top of my head, there's nothing that this court could decide in deciding removal that would preclude Exxon Mobil from raising any defenses. Well, no, no, no. Obviously, no one's going to put a muzzle on them and say don't file motions. What I'm asking you is, do you agree that in state court, they would be entitled to raise an argument of federal preemption? And that if the federal preemption argument were correct, that the state court would be obligated to recognize it. As a matter of the supremacy clause. Yes, your honor. I believe that Exxon Mobil would raise, and I believe that Attorney Shammigan represented as much of this court, that once this case is remanded, they intend to raise- No, I know what they're planning to say. What I'm asking, and I'm not asking you, just to be clear, I'm not asking you to concede that it's a valid preemption argument at all. I understand you probably take the view that there's no preemption. But if you were to take the conscientious view on the state side, look, we do think preemption applies. Would your view be that the state court would be obliged, as a matter of supremacy of federal law, to recognize the federal preemption argument in state court? Yes, the court would have to consider the ordinary preemption, the defense, the special defense of preemption. Which, as you know, is different than complete preemption, which is the only grounds that could get you a removal based on preemption, and obviously is different than the defense of preemption. So you're conceding as, I mean, what's the holding of several of the cases that you cite, I think in your brief, the analogous cases where cases were remanded, that the preemption defense was going to be played out, was appropriately to be played out in state court. Yes, your honor. In fact, in the city of New York decision, as you know, because you wrote it, the San Mateo case is cited, where it says that that is an issue that is properly decided by the state courts after remand. As you know, your honor, you crafted the city of New York decision so that it can't- But that old thing, come on. No, but I want you to focus on some other stuff. So, Mr. Chamagam was talking about the Philippines case and suggesting that that carves out sort of a different route by which we can assert federal jurisdiction about removal. So what's your response on that case? As Attorney Chamagam's colloquy with Judge Nardini, I think, explained our position accurately, which is that the Republic of Philippines case predates Grable. And as the Supreme Court mentioned in the Gunn decision, before Grable, there were no real rules about removal. There wasn't a four-pronged test like there is post-Grable. And that if the Republic of Philippines case came forward now, it would be treated as a Grable case and it would be put through the four prongs in order to see- What do you do with the fact that we did talk about there being two appropriate bases for which that case was, in fact, removed? And we did talk about federal common law with respect to the foreign affairs power, right? Well, there are potentially specific areas of federal law, as Judge Sullivan alluded to, that could be completely- No, but I'm talking about what we said in the Philippines. I mean, it may be that you're right, that if that case were to be decided today, we would articulate different reasoning for it. But the fact is, don't we have to live with the reasoning of a prior panel? And if we offer two bases, one of which was pretty, the Merrill Dow sort of variant was really a pre-Grable-ish thing. But wasn't the other basis, which was the reference to foreign common law, I'm sorry, federal common law based on the foreign affairs power. I mean, we did talk about that, right? You did talk about it. Our submission is that it was primarily a decision based on what's now known as the Grable Doctrine. That other discussion was- Primarily. Well, the other discussion was- We articulate two bases for something. And then nowadays we think only one is probably what we should have said. But if we said two things, why aren't both valid? Well, wasn't the holding based more on the Grable, on what's subsequently known as the Grable Doctrine, and less on the commentary on the federal common law? That's my interpretation of the case. But regardless, even should this court credit the latter, that would only get so far as to say federal common law in some circumstances, in some cases, could potentially provide a grounds for removal. It doesn't get Exxon Mobil to where they need to be, which is that federal common law in this case supplies the rule of decision, as they like to say, and is appropriate grounds for removal. Well, for the Philippines, I mean, maybe we should focus on the language in Philippines, and it is. I mean, it's a 35 year old case. But it says there's basically two ways to implicate federal law that might be enough to get around the well pleaded complaint rule. And one is if the federal law is so powerful as to displace entirely any state cause of action. And the other is the presence of a federal issue as a necessary element of the state created cause of action. Affirmatively asserted in the complaint. So that seems to me, I wouldn't think that you would view yourself as having trouble with either of those, would you? No, we don't have trouble with either of those. The first one is complete preemption, and the second one is essential element language is grable. I mean, the Supreme Court has reiterated, in many years since that 35 year old case, your honor, in, for example, a beneficial national bank, the Supreme Court sets forth the means and the ways in which removal can be achieved. Removal can be achieved, as you know, the well pleaded complaint rule and the exceptions or corollaries thereof, which are complete preemption and the so-called grable doctrine. And those are the avenues for removal, and so this entire conversation about federal common law actually exists outside of the legal framework, the black letter law that courts must consider when considering removal. I see I'm over my time, I'd like to- You're not as much as the other guy was. I'm not, your honor. I'm happy to answer any further questions on federal common law or anything like that. And I'm also happy to speak about the two federal statutes that Exxon Mobil argues provide grounds for removal if the panel is interested, or otherwise I'm happy to conclude. Okay, no further questions then. Thank you very much, Mr. Cheney. Thank you. We're now here for Mr. Chamigan for two minutes, maybe, maybe more. I'd like to just make three points on rebuttal at the court's leave. First about the relief being sought, second why the relief matters, and then third on the question of why removal is appropriate. On the issue of the relief being sought, tellingly my friend Mr. Cheney started with the injunctive relief that is being sought here. And then tried to back into an explanation for the monetary relief that's being sought. Now true enough, that monetary relief is equitable relief. But it is in fact, as a practical matter, many different forms of monetary relief, disgorgement, restitution, and statutory penalties. And what Mr. Cheney said about that relief, when he got to it, was that it was relief for injuries only to consumers. But that simply is not accurate. And I would point the court- And the statute requires, there'll have to be some connection to the injury to the consumers that were deceived, right? The way that the state tries- They can say all they want, they could ask for all kinds of things. But the statute does say what the remedies would be for a violation, right? The way that the state tries to finesse this is to say that at a very high level of generality, that restitution is available on a claim under CUTPA. And the state tries to embrace Judge Hall's limitation of that relief to restitution for injuries attributable to Exxon Mobil's misrepresentations. But first, if you look at the complaint, and I would point the court to paragraph 181, it is quite clear, and that's at page 43 of the joint appendix, it's quite clear that the state is seeking relief not just for injuries to consumers, but for injuries to the state, as it says in that paragraph, the state, its people, and its municipalities. We'll have to expend billions of dollars to adapt and implement resilience measures to combat the ongoing negative effects of climate change. And Mr. Cheney certainly did not say anything today that suggested that he was limiting that to the traditional remedy in a consumer deception case, as you pointed out, Judge Sullivan, relief to consumers to make them whole for the harms that they suffered from the deception. That's a requested section, that's an injury, and because they need to do a counter-education campaign, which is how I read that, shouldn't convert this to a federal question because they are going to be using their own. I mean, when I read that, that reads to me like they need to have their own consumer education campaign, and they're going to have to do a counter-education that doesn't, we're trying to get money for all of it. Well, I don't think that anything Mr. Cheney said today suggests that their relief is limited to that, and I do think that the discussion in that section, and I would go back to the section starting at the bottom of 41 and going on to 43, indicates that the state is seeking to recover for the harms it's suffering as a result of climate change. Well, I assume you're referring, and I'm looking, GA51 paragraph 5, with the prayer for relief, I'm assuming that's the remedy that you're arguing ties into paragraph 181, which is an order directing Exxon Mobil to pay restitution to the state for all expenditures attributable to Exxon Mobil that the state has made and will have to make to combat the effects of climate change. That's, I assume, the one that's in our mind linked to 181. Absolutely. So, Judge Perez, I guess what I would say is that, you know, to the extent that you disagree with our characterization of the rest of the complaint, the prayer for relief sets that out, and I don't think that the mere fact that it's restitution for expenditures attributable to Exxon Mobil's alleged deceptive conduct, which was the gloss that Judge Hall put on that language, knocks out the fact that these are damages that are being sought for harms caused by climate change. But do you have any case that says where they ask for the moon in terms of damages, even beyond what the statute would entitle them to, that's a basis for federal removal? I do have a case that stands for the proposition that federal common law applies in that circumstance. And that case is the city of New York. So let me point you to the relevant reasoning there. Could you give us the citation for that case? I believe it's in the Federal Reporter. Let me say a couple things about this issue of why the relief matters, because, again, that was a large part of the colloquy with Mr. Cheney. He said at one point that relief was irrelevant at this stage of the proceedings. And we simply do not agree with that. And I think that the concession that gives the lie to that proposition is that when Judge Sullivan asked whether or not the analysis would be different if the state were seeking an injunction against production by Exxon Mobil, he said that that was true. And in some sense, we think that this case is no different from that, because the damages that are being sought here are damages that are designed to regulate production. And I would point the Court to two things in the city of New York opinion. First, at the beginning of the discussion of whether or not federal common law applied, the Court said, and I'm quoting, such a sprawling case is simply beyond the limits of state law. To start, a substantial damages award, like the one requested by the city, would effectively regulate the producer's behavior far beyond New York's borders. Look, Paul, that's right. I mean, but that's a totally different context, right? I mean, so that case doesn't say anything about removal or about what you need to establish to remove under federal question. So I think we keep coming back to fracas, which is really, I don't know if I'm pronouncing that right. I always think fricassee and chicken. But fracas, I mean, basically says there's three ways around the well-pleaded complaint rule, right? So we simply don't agree with that. You're suggesting that it's broader than that. But let me say. It doesn't seem to suggest that there's additional effort, additional ways. But with the Court's leave, let me just say one more thing about this issue of why federal common law applies, because I do think that the issue of removal implicates distinct law. We certainly recognize that the City of New York does not resolve that issue. But many of the questions have concerned this issue of whether or not the cause of action here somehow takes this outside the ambit of the City of New York. And the two additional things I would say on that, and then I'm very happy to spend whatever time the Court would like to on the issue of removal, are that the Court goes on to say, in response to the City's argument that, quote, because it seeks damages, not abatement or the imposition of pollution standards, its claims do not threaten to regulate emissions at all, let alone beyond New York's border, that that ignores economic reality. And the Court also rejected the other argument that I heard my friend Mr. Cheney to make today, that the City of New York is somehow different because it sought to regulate emissions. The irony is that the City of New York sought to make exactly the same argument that the State of Connecticut is making today, as the Court put it, quote, to hear the City tell it, this case concerns only the production, promotion, and sale of fossil fuels, not the regulation of emissions. But the Court went on to say that that is not an appropriate way to approach this, that artful pleading cannot transform the City's complaint into anything other than a suit over global greenhouse gas emissions, and then it proceeded to discuss the remedy in the language that I just quoted. Right, but it's not a discussion of artful pleading with respect to the well pleading complaint rule. It's not a Federal removal case. And so if we agree with you that Federal common law applies to various aspects of the relief sought in Connecticut's complaint, your view seems to be that if it applies to any of it, Federal removal is appropriate. Is that accurate? Is that a fair characterization of your position? In this context, which is to say that the question that is left in this case, a question that this Court did not resolve in the City of New York, is whether Federal common law applies. The case gives rise to Federal jurisdiction that Federal common law is not merely a defense. There was much discussion about the Republic of Philippines case, and Judge Sullivan, you pointed to the exact language that I would have pointed to the discussion at page 354 of that case. Well, it seems to me that that doesn't really help you, though. It seems to me what that really says is that that's pretty much consistent with what Fracas says, and so this is not a new or different way around the three exceptions identified in Fracas. I don't think so, and let me explain why. Explain to me. So let's talk about the very language that you zeroed in on, on page 354. First, as you rightly pointed out, the Court talked about Federal common law, and then it proceeded to talk about essentially the equivalent of Grable, obviously predating Grable. So it relied on both of those as potential bases for Federal jurisdiction. Now, my friend Mr. Cheney tries to deal with the first part of that by saying, well, the Court was really talking about complete preemption. I would respectfully disagree. In the language that you quoted, the Court talked about Federal common law, and it talked about whether Federal common law is so powerful to displace a purely state cause of action. Now, to be sure, as I noted in my opening, the Court relied on complete preemption cases in that context, but the upshot of our point here is that the Court was talking about Federal common law providing a basis for Federal jurisdiction, and to the extent it was looking at complete preemption cases in the statutory context, that was for the reason that I suggested earlier to you, Judge Nardini. It was looking to those cases because the question is whether this is a situation in which Federal common law supplies the rule of decision. And the Court ultimately said- Displace entirely any state cause of action. I guess the point we keep coming back to is that even if we agree with you that this complaint is overblown, it's designed, frankly, for reasons that might have nothing to do with actually the relief sought, and that some of the relief sought is completely untethered to what the statute is about, there are at least potentially aspects of the state claim that could go forward. But I think the reason why this is significant is that the argument that we are making here, and I think it's very easy to get caught up in labels, some of the language in the cases is a little bit imprecise about this, but at bottom, our submission is that Federal law does displace state law entirely. In other words, the question here is when Federal common law applies, what is it doing? And I would point the Court back to the Supreme Court- I'm sorry, let me interrupt you though. He kept talking about algae. I don't think this is a case about algae at all. But if it is the case, if part of the pleading is that statements about how we're producing algae-based fuels that are going to be great for the environment, and that's misleading because they're really not, and they're really not any significant portion of what it is that they're actually selling, why isn't that a proper claim to bring under CUTPA? Well, let's say that it's a claim. Maybe I'm slightly modifying it. I may not be precisely recalling this hypothetical. Let's say that we claim that our gasoline, you know, is algae-based, that Shell's gasoline is not algae-based, and consumers buy our gasoline, and that turns out not to be true. That turns out to be a misrepresentation. If the remedy that's being sought is that where you have consumers that made that choice, you need to compensate those consumers for that choice, that's a traditional consumer deception claim. But that is not this claim. I mean, this is a complaint, which in the very first ---- Again, that seems to be a defense, which is that they're not entitled, even if they could prove liability, they're not entitled to anything close to the relief that they're seeking. And that's a defense that we get to make in state court. But that brings us back to the first question. And, again, I think it's important to be linear about this. It's important to sort of look at the first question, which is how do you determine whether this is in the box of cases where federal common law applies because they're like the interstate pollution cases, et cetera. This Court's reasoning in the City of New York is exactly on point for this complaint. And the mere fact that the state styles its claims as cut-pulp claims rather than nuisance claims can't overcome the reasoning that I pointed to on page 92 and the reasoning throughout the Court's opinion. The issue that you have been focusing on primarily, Judge Sullivan, is this question of, so federal common law applies, what does that mean? And I guess the two principles ---- Or does it entirely preempt the field with respect to this complaint? And I guess the way in which I think the labels get complicating is that when people talk about complete preemption, they're ordinarily talking about statutory preemption. Those are the contexts in which the Supreme Court has used that label, contexts in which federal law essentially occupies the field such that state law has no room to operate. Our submission, the reason that I keep saying that this is akin to complete preemption, Judge Nardini, is I'm not trying to be obstreperous here. It's because we think that when federal common law applies here, it too displaces entirely state law. Those were the words that the Court used in the Republic of Philippines case. And state law has no room to operate. One way to think about it in this context is that what a state is doing, and this is why ---- But aren't you saying the word displace because you don't want to use the word preemption because preemption basically requires a statute? I mean, what I'm wondering is if the argument is just you're trying to ask us to make new law and maybe we would get further if you told us why we should do that as opposed to telling us that we're not when we're all chafing against that suggestion. So when you say displace, is that not preemption? I'm not trying to be difficult in using the word displace. The reason I'm using the word displace is that when you think about ordinary preemption, that is a defense. You can't use preemption because to be completely preempted, that cannot coexist with the idea of common law because we have statutes and regulations and stuff on pollution and on climate change. Is that why? Let me try to explain this, and if I don't succeed, I'll try again. The best way I think to understand this, Judge Perez, is that we are not relying on preemption in the sense of a defense because that understates the role that federal common law plays here. I do think that when people talk about complete preemption, that is the context in which preemption does not operate as a defense. That's a context in which federal law, again, supplies the rule of decision. But courts talk about complete preemption in the context of statutes. And so in some of these other cases, like the nuisance cases, where we have made in the alternative an argument about complete preemption, it's because we think that the Clean Air Act is like the statutes at issue in cases like AFCO and the like. So that is not the argument that we're making here, but we are making the argument that federal common law operates in the same way. There is no room for state law to operate. And as I was saying to Judge Nardini, because he had raised this issue in the opening, we think that if you look at the Supreme Court cases on which this court relied in the city of New York, the cases involving ordinary claims of interstate pollution, the reason that federal common law operates in that context is because really it's a matter of constitutional structure. A state cannot project its policies beyond its borders. In other words, a state, of course, has the power to regulate intrastate pollution, but a state does not have the power to regulate interstate pollution. That's a gap where federal law provides the rule of decision, because state law cannot. And that is, I think, distinct as a conceptual matter from ordinary preemption, where state law can happily supply the rule of decision, but because of some federal policy or another, a federal policy, for instance, embodied in a statute or even in the case of federal common law, federal law as a matter of policy says that state law claim cannot go forward. This argument goes further than that, and I'm very willing to acknowledge that this argument is distinct from that type of argument. Because it's an argument that federal common law, in fact, supplies the rule of decision. There is no room for state law to operate with regard to this sort of claim. All right. Mr. Chamagam, I think I've spent more time with you this week than I have with my wife. So I guess we're going to have to call it a day. I will note I don't think we had any discussion about federal officer removal or special jurisdiction under the OCSLA. We'll rely on the briefs, obviously, for that. So I want to thank you both. Very well argued. Interesting case. We will reserve decision, of course. That concludes the arguments on the calendar for today. So, Ms. Beard, would you please adjourn court? Court is adjourned. Thank you.